UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| JAMES MATTHEW FRANZESE, ) | Case No. 6:07-bk-03944-KSJ |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |

MEMORANDUM OPINION SUSTAINING TRUSTEE'S
OBJECTION TO DEBTOR'S PROPERTY CLAIMED AS EXEMPT

The Chapter 7 trustee objects to the debtor's request to exempt personal property in the amount of $4,000 made pursuant to the expanded personal property exemption recently granted in new Section 222.25(4) of the Florida Statutes, which provides:

> The following property is exempt from legal process…
>
> (4) The debtor's interest in personal property, not to exceed $4,000, if the debtor does not claim or receive the benefits of a homestead exemption under Section 4, Article X, of the State Constitution.

The trustee asserts that the debtor has received the benefit of the constitutional homestead protection even though he did not claim the home exempt under Article X, Section 4 of the Florida Constitution and is not entitled to the new $4,000 exemption in personal property. The debtor, who owns his home with his non-filing spouse and who relies on tenancy by the entireties law to protect his home from creditor's claims, opposes that position and contends that, as he is receiving no benefits bestowed under the Florida Constitution for his homestead exemption, he is entitled to the $4,000 personal property exemption.

The facts are undisputed. On October 20, 2007, the debtor filed this Chapter 7 bankruptcy liquidation case. In Schedule C, which lists exempt property, the debtor claimed a

$4,000 exemption in his car, a 2004 Audi A-4, pursuant to Section 222.25(4) of the Florida Statutes (Doc. No. 1).

The debtor jointly owns a home with his non-filing wife. He listed the Orlando home as an asset in his schedules and valued the property at $275,000 (Schedule A, Doc. No. 1). The mortgages encumbering the property total approximately $345,000. The debtor also indicated that he intended to reaffirm the debt associated with the home; however, he never executed or filed any reaffirmation agreements.

The debtor initially did not claim the home exempt. In a recent amendment to Schedule C (Doc. No. 22), however, the debtor now claims that the home is exempt pursuant to 522(b)(3)(B) of the Bankruptcy Code,[1] asserting that the property was owned as tenants by the entireties between he and his wife and is exempt from the creditors' claims. The debtor claimed no exemption for the home pursuant to Section 4, Article X of the Florida Constitution.

The debtor makes two arguments. First, the debtor argues that he is not receiving the benefits of a homestead exemption pursuant to the Florida Constitution but rather is receiving an exemption pursuant to Florida common law theory allowing husbands and wives to own property as tenants by the entireties. Second, the debtor argues that, because he has no equity in the home, he is not receiving the benefits of a homestead exemption because the debt encumbering the property exceeds the value of the property.

The debtor first argues he is entitled to claim his home exempt because he owns the house as a tenant by the entirety with his non-filing spouse and does not rely on or receive any benefit under the Florida Constitution. Section 522(b) of the Bankruptcy Code generally permits a debtor to protect, or exempt, certain property of the estate from creditors' claims. Section

---

[1] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

522(b)(3)(B) of the Bankruptcy Code specifically allows for the exemption of property owned by a debtor as a tenant by the entirety:

> . . . in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522 (b)(3)(B) (2007).

Tenancy by the entireties, as defined by applicable Florida law, is a unique form of property ownership only married couples may enjoy. Beal Bank, SSB v. Almand and Associates, 780 So.2d 45, 52 (Fla. 2001). Entireties property belongs to neither individual spouse, but each spouse holds "the whole or the entirety, and not a share, moiety, or divisible part." Bailey v. Smith, 103 So. 833, 834 (Fla. 1925). Both real and personal property can be owned as entireties property in Florida.[2] Id. A party contending marital property is held in another form of ownership carries the burden of proof by a preponderance of evidence to establish a tenancy by the entireties was not created. Beal Bank, 780 So.2d at 58.

The Florida Constitution similarly protects Florida homes from creditors' claims in Article X, Section 4(a)(1) of the Florida Constitution, which provides:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

---

[2] Six unities must exist simultaneously for property to be owned as tenants by the entireties in Florida: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests must be identical); (3) unity of title (the interest must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names). Beal Bank, 780 So.2d at 52. "Should one of these unities never have existed or be destroyed, there is no entireties estate." United States v. One Single Family Residence With Out Buildings Located at 15621 S.W. 209th Ave., Miami Fla., 894 F.2d 1511, 1514 (11th Cir. 1990). A presumption that marital personal property is held as tenants by the entireties arises when all six unities are present. In re Daniels, 309 B.R. 54, 59 (Bankr. M.D. Fla. 2004) (extending the presumption created in Beal regarding marital bank accounts "to include all marital personal property, not just financial accounts.").

> (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; upon which the exemption shall be limited to the residence of the owner or the owner's family.

FLA. CONST. ART. X, § 4.

The Florida constitutional homestead protection is more extensive than the protection bestowed by tenancy by the entireties law. For example, only spouses can own property as tenants by the entireties. Any natural person can claim the constitutional homestead protection. Also, joint creditors of the spouses can reach the entireties property, but they cannot reach property that the debtor claims as homestead, unless one of the applicable exceptions applies. Matter of Koehler, 6 B.R. 203 (Bankr. M.D. Fla. 1980); Stanley v. Powers, 166 So. 843 (Fla. 1936). Balding v. Fleisher, 279 So.2d 883, 884 (Fla. App. 1973) (holding it is well established in Florida law that property held as a tenancy by the entireties cannot be made available to answer for the judgment debts of one of the tenants individually); Sheeler v. U.S. Bank of Seminole, 283 So.2d 566 (Fla. App. 1973) (holding funds held in joint bank account of a husband and wife as a tenancy by the entirety are not subject to garnishment or execution to pay the individual debt of one of the parties). The Florida Constitution therefore provides an unlimited and powerful exemption for Florida homeowners, married or not.

Florida state courts consistently have held that the homestead exemption[3] should be liberally construed in the interest of protecting the family home. Quigley v. Kennedy & Ely, Ins. Inc., 207 So.2d 431, 432 (Fla. 1968); Graham v. Azar, 204 So.2d 193, 195 (Fla. 1967). The homestead exemption is designed to provide solidity and preservation of the home. In re

---

[3] A debtor may claim an exemption either pursuant to the federal exemptions provided in Section 522(d) of the Bankruptcy Code or by state law where a state has opted out of the federal exemption scheme. Florida has opted out of the federal bankruptcy exemption scheme, and a debtor filing for bankruptcy protection in Florida is limited to the use of Florida's state law exemptions. Fla. Stat. Section 222.20 (1988).

Harrison, 236 B.R. 788, 789-90 (Bankr. M.D. Fla. 1999). "Any challenge to the homestead exemption claim places a burden on the objecting party to make a strong showing that the Debtor is not entitled to the claimed exemption." In re Laing, 329 B.R. 761, 770 (Bankr. M.D. Fla. 2005); In re Harrison, 236 B.R. 788, 790 (Bankr. M.D. Fla. 1999).

Homeowners seeking to qualify for the homestead exemption must meet *both* an objective and subjective test. First, the owner must actually use and occupy the home. Second, he or she must express an actual intent to live permanently in the home. In re Brown, 165 B.R. 512, 514 (Bankr. M.D. Fla. 1994) (holding homestead established by actual use and occupancy coupled with an actual intent to live permanently in a house); Hillsborough Investment Co. v. Wilcox, 13 So.2d 448, 452 (Fla. 1943) (noting it is well-settled that homestead status is established by the actual intention to live permanently in a residence, actual use and occupancy).

A homeowner, however, can forfeit the right to claim a home exempt. Any action taken by the homeowner that is incompatible with an intention to permanently reside in a residence may cause the homeowner to lose the benefits of Article X, Section 4, of the Florida Constitution. Semple v. Semple, 89 So. 638, 640 (Fla. 1921) (holding owner did not have the intention needed to establish a homestead where he executed a deed of conveyance of the property to his wife). Finally, a homeowner can waive the right to claim homestead protection by abandonment or alienation in any manner provided by law. Barlow v. Barlow, 23 So.2d 723, 724 (Fla. 1945).

As such, not every natural person "receive[s] the benefits of a homestead exemption under Section 4, Article X, of the Florida Constitution." Those who do not own a home, such as renters, obviously cannot receive any benefit from the exemption. Even persons who own a home may not, at the time of filing of their bankruptcy petition, qualify for the homestead

exemption. For example, when a debtor expresses an intention to surrender the property, the debtor exhibits a lack of intention to permanently reside in the home. The home is not entitled to constitutional homestead protection. Nor would a home qualify as a homestead if a debtor previously had alienated his or her interest to a former spouse in a divorce. In these types of cases, the debtor is still a title owner of the home but has no actual intent to live in the home and cannot claim the house as homestead.

The eligibility of a debtor to exempt property is fixed at the time the bankruptcy petition is filed. Section 522(b)(3)(A) of the Bankruptcy Code provides that ". . . any property that is exempt under Federal [or State] . . . law that is applicable *on the date of the filing of the petition* at the place in which the debtor's domicile has been located[.]" (Emphasis added.) Post-filing changes in the debtor's status, therefore, are immaterial to the consideration of whether property retains its exempt status. For example, in In re Petersen, 897 F.2d 935 (8th Cir. 1990), the debtor claimed a homestead exemption on his bankruptcy petition. Eight months later, while the case was still pending, he died. Id. at 936. The trustee argued that the debtor had abandoned the property and lost the right to claim any homestead protection. Id. The Court of Appeals held that the entitlement to the homestead exemption was fixed at the time the debtor filed his bankruptcy petition and was not lost by the debtor's later death. Id. at 937. The Court of Appeals reasoned that determining the debtor's right to exemptions on the date of filing facilitates the debtor's fresh start by reducing uncertainty and potential subsequent litigation. Id. at 938. See also In re Rivera, 5 B.R. 313 (Bankr. M.D. Fla. 1980) ("it is evident that the right to claim exemptions by a debtor is governed by the facts and governing circumstances which existed on the date the petition was filed and not by any changes which may have occurred thereafter").

The debtor in this case satisfies both elements needed to establish homestead status. First, he objectively uses and occupies the home. Second, he has demonstrated subjectively that he intends to remain permanently in the home—by failing to surrender it (even though he asserts it is mortgaged beyond its value), by asserting his rights derived from tenancy by the entireties in order to shield the home from his creditors, and by indicating he intended to reaffirm the debt encumbering the home. Because there has been no objection raised as to the character of the property, and because the Court must construe homestead rights liberally, the debtor is qualified to claim homestead protection. The debtor, however, has elected not to *affirmatively* claim his home exempt under the Florida Constitution.

The debtor's failure to affirmatively claim the constitutional homestead exemption did not and does not preclude him from relying on the provision. Nor does the debtor's reliance on Florida tenancy by the entireties law waive the benefit he receives under the Florida Constitution. A debtor's failure to claim homestead status does not waive the debtor's right to the exemption. Grant v. Creditthrift of America, Inc., 402 So.2d 486, 488 (Fla. 1981) (holding property owner's failure to file designation of homestead status before levy did not preclude her from asserting homestead rights once she received word of impending auction); Fidelity & Cas. Co. of New York v. Magwood, 145 So. 67, 68 (Fla. 1932) (holding failure to assert homestead status as defense in suit to cancel conveyance and order sale of land to satisfy judgment against claimant did not preclude him from contesting ouster from homestead).

Here, the debtor was eligible to claim his home exempt under Section 4, Article X of the Florida Constitution. He lives in the home and intends to permanently reside at the house. He has not waived his right to claim the homestead protection by relying on tenancy by entireties law. The only logical reason he did not claim the constitutional homestead protection is because

he would like to both keep his home and simultaneously receive the additional $4,000 personal property exemption recently granted in Section 222.25(4) of the Florida Statutes. The primary issue is whether the debtor qualifies for this new exemption.

Section 222.25(4), Florida Statutes (the "Statutory Personal Property Exemption") provides a new $4,000 personal property exemption to debtors, subject to two exclusions. The first exclusion becomes effective in the case where a debtor "claim[s] . . . a homestead exemption under Section 4, Article X, of the Florida Constitution." The debtor did not affirmatively claim his home as exempt under the Florida Constitution, and, thus, this exclusion does not apply. The second exclusion arises when a debtor "receive[s] the benefits of a homestead exemption under Section 4, Article X, of the Florida Constitution." The debtor argues that, because he relied on tenancy by the entireties law to protect his home from creditors' claims, he receives no benefit from the constitutional homestead protection. The Court disagrees and holds that the debtor *does* receive a benefit from the homestead protections granted under the Florida Constitution and is not entitled to the additional Statutory Personal Property Exemption. If, on the day a bankruptcy petition is filed, a debtor owns a home, lives in the home, and plans to reside in the home in the future, the debtor cannot claim the Statutory Personal Property Exemption.

The plain meaning of Section 222.25(4) supports this result. Courts must interpret statutes by employing the plain meaning approach. In re Paschen, 296 F.3d 1203, 1207 (11th Cir. 2002); In re Porter, 182 B.R. 53, 55 (Bankr. M.D. Fla. 1994). "The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) (alteration in original) (internal quotation marks omitted).

"[C]ourts may only look beyond the plain language of a statute if (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent." Hanna v. WCI Communities, Inc., 384 F. Supp. 2d 1322, 1329 (S.D. Fla. 2004) (*quotations and citations omitted*). Here, the statute is not ambiguous, no absurd result ensues, and no contrary legislative intent exists that would require a different conclusion.

Courts must give meaning to every part of a statute whenever possible. "It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." Inhabitants of Montclair Tp. v. Ramsdell, 107 U.S. 147, 395 (1883). The language of Section 222.25(4) provides two exclusions—one for debtors who affirmatively "claim" constitutional protection, and one for debtors who "receive the benefits of" the Florida Constitution. The rules of statutory construction necessarily require each exclusion to have a different meaning. The concept of "claim[ing]" a homestead exemption pursuant to Section 4, Article X of the Florida Constitution therefore is different than "receiv[ing] the benefits of" a homestead exemption pursuant to that provision.

The key to interpreting Section 222.25(4) is to define what it means to "benefit" from the constitutional homestead protection. Neither the Florida Statutes nor the Florida Constitution defines the term "benefit." The common language dictionary entry for "benefit" includes two potentially relevant meanings. When used as a noun, a benefit is "something that is advantageous or good; an advantage[.]" When used as a verb, to benefit is "to derive benefit;

profit[.]" Random House Webster's College Dictionary 127 (1992). Perhaps more relevant,[4] Black's Law Dictionary defines a "benefit" as an "advantage," "privilege," or "interest." Black's Law Dictionary 143 (5th ed. 1979). The entry for "benefit" includes the following helpful comment:

> When it is said that a valuable consideration . . . may consist of a benefit to the promisor, "benefit" means that the promisor has, in return for his promise, *acquired some legal right* to which he would not otherwise have been entitled.

Id. (*emphasis added*).

A "benefit" therefore is the right, privilege, or interest in some advantage to which a debtor is entitled to receive, regardless of whether the debtor actually has realized the advantage. If a person acquires "some legal right to which he would not otherwise have been entitled," the person has received a legal "benefit."

In this case, the privilege, advantage, or legal right referred to by Section 222.25(4) is the legal right protecting a home from process, lien, or levy by Section 4, Article X of the Florida Constitution. The phrase "receive the benefits of" plainly refers to the legal right or advantage conferred upon natural persons by the Florida Constitution, regardless of whether the person has occasion to rely on the privilege or whether he or she chooses to do so even if the occasion permits. All natural persons who meet the objective and subjective tests for the homestead exemption receive a benefit under Section 4, Article X of the Florida Constitution, even if they do not affirmatively claim the exemption, given an opportunity.

The debtor here is a natural person who owns and lives in his home with his wife. He has indicated he intends to reside in his home permanently. He meets both the objective and

---

[4] Absent contrary legislative intent, legal terms in a statute are presumed to have been used in their legal sense. Williams v. Dickenson, 9 So. 847, 849 (Fla. 1891) (disapproved of on other grounds by, Abraham v. Baldwin, 42 So. 591 (Fla.1906)).

subjective tests for the homestead exemption and, as such, receives a benefit under the Florida Constitution and is excluded from using the Statutory Personal Property Exemption.

This result is logical and not absurd. Section 222.25(4) provides that a homeowner may not use the Statutory Personal Property Exemption if they either affirmatively "claim" the constitutional homestead exemption or *could* claim the benefit on the petition date. This interpretation gives meaning to both exclusions, "claim" and "receive the benefits of," contained in the statute. See, Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992) (where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another).

The first exclusion prevents debtors who affirmatively *claim* a homestead exemption from also claiming the Statutory Personal Property Exemption. The second exclusion prevents debtors who *could have claimed* a homestead exemption from claiming the Statutory Personal Property Exemption. This interpretation is harmonious with the first exclusion and permits debtors who surrender their homes as well as debtors lacking homestead property to claim the Statutory Personal Property Exemption. The only debtors who are excluded are those who retain their homes with or without affirmatively claiming the homestead exemption.

Two sister courts also have found the plain language of Section 222.25(4) contemplates receipt of a benefit by a debtor even where the debtor does not affirmatively claim a constitutional homestead exemption at the time of a bankruptcy filing. In re Morales, 2008 WL 394651 (Bankr. S.D. Fla. 2008); In re Jill A. Gatto, 380 B.R. 88 (Bankr. M.D. Fla. 2007). In Gatto, three individual debtors claimed the Statutory Personal Property Exemption. All were homeowners. None claimed the Florida Constitutional homestead exemption, electing instead to surrender their homes. Upon objection by the trustee, the bankruptcy court, relying on the plain

language of Section 222.25(4), found that the debtors did not receive any benefit from the homestead exemption *only because the debtors had elected to surrender their homes*. Id. at 93. The debtors lost the benefit of the homestead exemption when they declared their intent not to reside permanently in their homes.

The debtor in Morales stated on his bankruptcy schedules that he would reaffirm mortgages encumbering his home, although he did not affirmatively claim the constitutional exemption for the home on his Schedule C.  The debtor later amended his schedules to reflect his intention to surrender the home.  Id. at 2.  Based on this belated surrender, the debtor then sought to use the Statutory Personal Property Exemption.  Finding factual issues precluded a finding that the debtor actually intended to surrender the home and relying on the plain meaning of Section 222.25(4), the Court held the debtor did receive the benefit of the constitutional homestead protection and was not entitled to the new personal property exemption.

Further, the Florida legislative history is consistent with the conclusion that homeowners who do or could claim constitutional homestead protection are not entitled to the new Statutory Personal Protection Exemption.  In the legislative committee reports, which are "proper sources of information in ascertaining the intent or meaning" of a statute, Rabren v. Board of Pilot Com'rs, 497 So. 2d 1245, 1248 (Fla. App. 1 Dist. 1986), the Florida Senate Professional Staff Analysis and Economic Impact Statement says this about the proposed §222.25(4):

> **III. Effect of Proposed Changes:**
>
> . . . The [bill] also increases the amount of personal property exempt from creditor claims, which is owned by persons *without* homestead property. . .

Fla. S. Prof'l Staff Analysis and Econ. Impact Statement CS/SB 2118 (2007) (*emphasis added*).

The intention of the proposed subsection as expressed by the committee report is clear. The Statutory Personal Property Exemption is available only to "persons without homestead

property[.]" Id.  The corresponding Florida House of Representatives Staff Analysis report merely recites the statutory language.[5]

In enacting Section 222.25(4), however, both branches of the Florida Legislature relied on a research proposal drafted by the Business Law Section of the Florida Bar, with the assistance of a University of Florida law student group.  Douglas W. Neway and Jeffrey Davis, Report of the Bankruptcy/UCC Committee of the Business Section of the Florida Bar: Proposed Amendment to Personal Property Exemption Statute Fla. Stat. Section 222.25 ("PPE Proposal") (August 7, 2006) (on file with Professor Jeffrey Davis, University of Florida College of Law).[6] The PPE Proposal recounts the history of the $1,000 personal property exemption, first included in the Florida Constitution in 1878. Id. The $1,000 exemption contains no provision to account for future inflation, yet $1,000 in 1878 dollars amounts to over $20,000 today. At the time of its enactment, in 1878, the personal property exemption would have exempted most if not all of an 1878 debtor's property. Id. The same was not true in 2007, when the legislature considered the new, increased statutory exemption in personal property.  The other constitutional exemption, the homestead exemption, has automatically increased with inflation because it protects the full value of an exempted home in current dollars and protects a virtually unlimited value in a debtor's homestead. Id.

---

[5] The corresponding House of Representatives Staff Analysis reads:

**Effect of Proposal:**

. . .The bill amends s. 222.25, F.S., to add an additional exemption . . . to include personal property up to $4,000, provided that the debtor does not receive the homestead exemption under the State Constitution. . .

Fla. House of Rep. Staff Analysis CS/SB 2118 (2007).

[6] The amendment resulting in the new subsection § 222.25(4) was the result of a research project conducted by the Association of Law and Business (ALB) at the University of Florida Levin College of Law, at the request of the Bankruptcy/UCC Committee of the Business Law Section of The Florida Bar. The report was prepared by Douglas W. Neway and Professor Jeffrey Davis and was delivered on August 7, 2006, to Bradley Saxton, Chair of the Bankruptcy/UCC Committee. The report was approved by the Executive Council of the Business Law Section on August 13, 2006. The Report then was sent as the PPE Proposal to the legislature for consideration.  Eventually, the Florida Legislature enacted Section 222.25(4), which became effective on July 1, 2007.

The PPE Proposal argued that debtors who do not own homestead unfairly fall victim to inflation while debtors with homestead can shelter practically unlimited value. Id. The $1,000 exemption shelters few assets in today's dollars. Significantly, the proposal explains:

> . . .More sophisticated debtors have been known to do bankruptcy planning that allows them to create protected assets through trusts, or Tenancy by Entirety planning, however average debtors do not avail themselves of these planning tools. The arguments against this proposal have been that Florida has the most generous homestead exemption protection of any state and Florida debtors are able to protect vast amounts of money in the form of equity in their homes. However, if a debtor has no homestead then he/she will not be able to benefit from that generous homestead [exemption] and will likely be left with only $1000 of automobile and $1000 of personal property. This has an extremely disruptive effect on the large number of debtors who don't own homes, live paycheck to paycheck and have either a paid-for used car worth about $5,000 to $7500 or tools of trade that are necessary for work. Florida's exemption laws do not adequately protect these essential assets [needed] . . . to leave destitute debtors with enough property to provide for themselves[.]

Id.

As initially conceived, the proposed Statutory Personal Property Exemption was intended to apply only "if a debtor has no homestead," to provide an additional exemption for the poorest and least "sophisticated" debtors. Furthermore, the PPE Proposal expressly contemplated the possibility that a debtor might own a homestead, protect it via a more sophisticated device, such as by relying on tenancy by the entirety law, and thereby forfeit the Statutory Personal Property Exemption. Certainly, the PPE Proposal does not in any way suggest that sophisticated debtors can claim the new personal property exemption *and* still retain their homestead. The legislature in enacting Section 222.25(4) considered the reasoning of the PPE Proposal and, by approving the two exclusions, contemplated that homeowners cannot claim the new exemption.

The legislative history, therefore, is consistent, not contrary, with the Court's reading of the plain language of 222.25(4) — a debtor "receives the benefit" of the constitutional

homestead exemption if they claim *or are entitled* to claim the benefit on the date they file bankruptcy, regardless of whether they have access to another legal device by which to protect the homestead property, such as by relying on tenancy by the entireties law.

The debtor in this case is not one of the poorest and least sophisticated debtors. He is in the words of the PPE Proposal a "[m]ore sophisticated debtor" who has created a protected asset in his homestead relying on tenancy by the entirety law. Nothing limits this election. However, because the debtor was entitled to claim the benefit of Section 4, Article X of the Florida Constitution on the date he filed the petition for bankruptcy, this Court holds that he is not also entitled to claim the Statutory Personal Property Exemption provided by 222.25(4).

The debtor's second argument is that, because the value of his home is less than the outstanding mortgages encumbering the property, he has no equity and can receive no benefit from the constitutional homestead exemption. This argument is specious, at best. Equity is not a prerequisite to claiming constitutional homestead protection, nor is equity or value of the home even relevant in the analysis. For example, a creditor might seek a junior lien on such property even when the debtor lacks equity when the creditor holds a more optimistic view of trends in property values. In any case, the debtor's lack-of-value argument is essentially the same as his tenancy by the entireties argument—that since he has no need of the Florida Constitution's protection, he receives no benefit thereby. This argument fails for the same reason his tenancy by the entireties argument failed. The debtor, for the purposes of Section 222.25(4), receives the benefit of Section 4, Article X of the Florida Constitution if he is *entitled* to claim the homestead exemption at the time he files his bankruptcy petition, regardless of his equity in the home or the value of the house.

The Trustee's Objection to the debtor's use of the Statutory Personal Property Exemption is sustained. A separate order consistent with the Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on February 19, 2008.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtor: James Matthew Franzese, 10535 Glassborough Drive, Orlando, FL 32825

Debtor's Attorney: Peter N. Hill, 1851 West Colonial Drive, Orlando, FL 32804

United States Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL 32801

Trustee: Leigh R. Meininger, P.O. Box 1946, Orlando, FL 32801